**Sylvia M. SAMPLETON, Plaintiff,**

v.

**John E. POTTER, Postmaster General, Defendant.**

**No. CIV.A.01–1226 RMC.**

United States District Court, District of Columbia.

April 23, 2003.

---

Stan Derwin Brown, Largo, MD, for plaintiff.

Michael Anthony Humphreys, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

Sylvia M. Sampleton has sued the Postmaster General, now John E. Potter, asserting that she was a victim of race and sex discrimination in that, allegedly, she was selected for a promotion to an EAS–25 position at the headquarters of the United States Postal Service ("USPS") and then the selection was converted to a detail at a

lower grade after she reported to work. The EAS–25 position went to a white female.[1] Having had full discovery on both sides, Mr. Potter has filed a motion for summary judgment, which Ms. Sampleton opposes. The Court has reviewed the parties' briefs, affidavits, supporting documentation and the full record and finds that there is no genuine issue of material fact and Mr. Potter is entitled to summary judgment as a matter of law.

## I. BACKGROUND

At all times relevant to the complaint, Ms. Sampleton's permanent assignment was as a PS–5 Flat Sorter Clerk at the Brentwood Road Processing and Distribution Center in Washington, D.C. Being an industrious person, she noticed Vacancy Announcement No. 02735 for a position as an EAS–25 Consumer Research Analyst in the Customer Satisfaction Measurement organization at USPS headquarters.[2] The announcement was posted in November 1997 for internal USPS applicants and in December 1997 for outside applicants. It stated that the "desired education" for a candidate was a master's degree in operations research, analysis, or a closely-related field. The position, which is the most senior staff position in Customer Satisfaction Measurement, required the selectee to be able to perform sophisticated statistical and operational analysis, to manage high level projects, and to interact with suppliers, contractors, other agencies, and corporations in a leadership capacity. Lizbeth Dobbins, Manager of Customer Satisfaction Measurement, was the selecting official and interviewed all of the candidates.

Ms. Sampleton applied for the EAS–25 position in late 1997. During her interview, Ms. Dobbins was impressed with Ms. Sampleton's energy and enthusiasm but concluded that she did not have the requisite experience or the preferred degree. Although Ms. Sampleton was enrolled in a graduate program—she was partway through her studies for a master's degree in social research and had 36 credits toward her degree by March 1998—she did not have work experience in the fields of operations research or statistical analysis. Nonetheless, Ms. Dobbins showed Ms. Sampleton around the offices of the Customer Satisfaction Measurement organization and introduced her to various personnel working there.

Ms. Dobbins contacted Ms. Sampleton in February 1998 "and asked [her] if she was interested in a detail assignment to Headquarters for a minimum period of 30 days, not to exceed 60 days. [Ms. Sampleton] advised Ms. Dobbins that [she] was interested and agreed to the detail in a level 21 position of Consumer Research Analyst." Compl. ¶ 16. After receiving the approval of Ms. Sampleton's plant manager, Ms. Dobbins requested specific information from the Time and Attendance unit at the Brentwood facility to make sure the PS Form 1723 (Assignment Order) would be completed correctly. *See id.*

Ms. Sampleton avers that she was informed by John Cooke, Manager of Processing and Distribution, that she "had been given a detail to Headquarters for 30 days of training *and after that she would be placed in the EAS–25 position.*"[3]

---

1. The complaint alleges discrimination based on race, sex and color, but only seeks a remedy for alleged violations based on race discrimination. *Compare* Compl. ¶ 1 *with* Compl. ¶ 25.

2. Customer Satisfaction Measurement analyzes the degree to which USPS consumers—business, residential and government—are

pleased or displeased with the service they receive.

3. Whether Mr. Cooke told Ms. Sampleton that she would be placed in the EAS–25 position after 30 days of training, as she believes, or that a 30–day detail would provide her with the opportunity to get experience and "might be … something she could advance in," as

Compl. ¶ 17 (emphasis added). Other than Ms. Sampleton's belief that she had been awarded the EAS–25 position after a period of training, the record is otherwise clear through documentation, affidavits, sworn testimony, and paragraph 16 of the complaint that she was offered a detail of 30 to 60 days at an EAS–21 position and was not offered the job for which she had applied. According to the complaint, Ms. Sampleton was later told that the reason for her detail was that "an individual who declined the job had changed her mind and decided to accept it." Compl. ¶ 19.

Ms. Sampleton filed a formal complaint of discrimination on March 20, 1998, alleging that she was selected to the EAS–25 position and the selection was thereafter converted to a detail after she reported to work. Her complaint was investigated and an administrative hearing was held on March 21, 2000. The decision of the administrative judge, dismissing her charge, was timely appealed to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the findings of the judge. *See Sampleton v. Henderson,* Appeal No. 01A04514, 2001 EEOPUB LEXIS 1344 (EEOC Mar. 6, 2001). Ms. Sampleton timely filed the instant civil action on June 5, 2001.

## II. STANDARD OF REVIEW

Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, it is a way to provide "the just, speedy and inexpensive determination of every action." Fed. R.Civ.P. 1. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there that is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those facts which, under the relevant substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). A genuine issue of material fact does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). "If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is 'required to provide evidence that would permit a reasonable jury to find' in its favor." *Walker v. Dalton,* 89 F.Supp.2d 20, 22–23 (D.D.C.2000) (quoting *Laningham v. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987)). The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable

---

he testified in the hearing before an Administrative Judge on her discrimination charge, does not have to be resolved. Def.'s Mot. for Sum. J. Ex. 9 at 154. The complaint asserts that Ms. Dobbins assured Ms. Sampleton that

she "had the job" when Ms. Dobbins invited Ms. Sampleton to interview for the EAS–25 position. Compl. ¶ 14. This allegation is inconsistent, however, with all of the rest of the documentary and testamentary evidence.

and justifiable inferences in its favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

■■■ This case involves the USPS's decision not to select Ms. Sampleton for the EAS–25 position—either because she was not offered the job at all or because she was not promoted after her detail—allegedly because of her race. To establish a *prima facie* case of discrimination, Ms. Sampleton must show that: (1) she was a member of a protected group; (2) she was qualified for the position; (3) she was not selected for the position; and (4) the selected individual was not a member of her protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In response to a *prima facie* case, Mr. Potter must introduce evidence of legitimate, non-discriminatory reasons for the selection. *See Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 761–62 (D.C.Cir.2002). "If the employer presents such reasons, then the burden shifts back to the plaintiff, who is 'afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)) (internal quotation marks omitted). In the end, "it is not enough ... to *dis*believe the employer, the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (emphasis in original).

## III. ANALYSIS

This is a case of sad confusion, but there is nothing in the record to suggest illegal discrimination. Ms. Sampleton was eager to advance into a professional position commensurate with her studies. Ms. Dobson thought she had aimed too high, but that she had great potential. Ms. Sampleton was offered a developmental detail, one in which she could demonstrate her capabilities and get some experience. Unfortunately, she thought she had been offered the job for which she applied. Her disappointment, therefore, is understandable.

■■■ There is a serious question of whether Ms. Sampleton has established a *prima facie* case of discrimination; specifically, it is not entirely clear that was she qualified for the Consumer Research Analyst position at the EAS–25 level. The vacancy announcement indicated that a master's degree in operations research, analysis, or a closely-related field was "desired."[4] More to the point, its list of "requirements" included (among others) such attributes as "[k]nowledge of operations research methodologies and techniques at a level sufficient to analyze management problems and management information requirements[;]" "[a]bility to evaluate contract proposals and recommend the selection of suppliers[;]" "[a]bility to analyze and interpret trends using data from a variety of measurement systems[;]" and "[a]bility to manage projects[.]" Def.'s Mot. for Summ. J. Ex. 3. Ms. Sampleton holds a Bachelor of Science degree in Sociology and, as of 1998, had partially completed her course work for a master's degree. *See id.* ex. 7. Insofar as the written record reveals, she did not have any experience in "operations

---

4. The Court cannot rely on Ms. Dobbins's testimony that she really intended this educational level to be a "requirement," which is not what the vacancy announcement stated.

The mere fact that Ms. Sampleton had not completed her master's degree did not make her automatically unqualified, as the USPS argues.

research methodologies," "using data from a variety of measurement systems" or evaluating contract proposals in the arcane business of government contracting. There is no record of the scope of her computer skills.

Because all inferences are to be drawn in favor of Ms. Sampleton, the Court finds that she was minimally qualified for the EAS–25 position. Ms. Sampleton thus has made out a *prima facie* case because she is a member of a protected class, she was qualified for the EAS–25 position, she was not selected for this position, and the selected individual is not a member of her protected class.

■ The next issue under the burden-shifting framework set forth in *McDonnell Douglas* is whether Mr. Potter has come forward with a legitimate, non-discriminatory reason to explain the selection that was made. The Court concludes that he has. The selectee has two master's degrees (business administration and sociology), significant computer skills with statistical software and spreadsheets, and had performed advanced statistical analyses concerning consumer activities. The vacancy announcement clearly stated that an advanced degree was preferred and the selectee fulfilled that preference. *See Carney v. Am. Univ.*, 960 F.Supp. 436 (D.D.C. 1997), *aff'd in part*, 151 F.3d 1090 (D.C.Cir.1998) (the university's preference for a candidate with a doctoral degree was a non-discriminatory reason for rejecting the plaintiff, who did not possess such a degree). Indeed, the selectee had the education, business, professional, and academic background to fit immediately into the EAS–25 position while, at a minimum, Ms. Sampleton would have required a training period.

■ Since Mr. Potter has advanced legitimate, non-discriminatory reasons for the USPS's selection, the burden shifts to Ms. Sampleton to produce evidence that the proffered reasons were not the true reasons and that the selection was actually made because of her race. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Ms. Sampleton argues:

> The Defendant's proffered reasons ("desired a Master's degree") for [its selection] can be rejected on the basis that such reasons 1) are not consistent with the record evidence and is [*sic*] otherwise weak, implausible, and incoherent, 2) did not motivate the Defendant, even if it is [*sic*] factually accurate, and 3) was [*sic*] arrived at *post hoc*.

Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5. These kinds of conclusory statements, however, do not satisfy her obligation to demonstrate pretext.

Ms. Sampleton correctly argues that stereotypical thinking, a proven corporate culture of discrimination, a double standard in promotions between African Americans and others, or the use of "code words" might be evidence of bias. However, she identifies no facts that would support a conclusion that Ms. Dobbins employed stereotypical thinking, that a corporate culture of discrimination at the USPS affected this selection process, or that there was a double standard or code words in use here. That Ms. Dobbins interviewed all of the internal USPS applicants, regardless of their qualifications, does not demonstrate bias.

The complaint alleges that Ms. Dobbins's statement that Ms. Sampleton was not "a finalist" for any position is evidence that the reasons given for the decision not to select her were a pretext for race discrimination. *See* Compl. ¶ 19. It also asserts that Ms. Dobbins's statement that "[Ms. Sampleton's] writing skills were assessed as not strong enough to successfully complete work assignments without considerable editing assistance," is also ev-

idence of pretext. Contrary to these allegations, neither statement shows pretext under these circumstances. Ms. Dobbins believed that Ms. Sampleton did not offer the necessary background, experience or education she wanted for the successful candidate. Therefore, Ms. Sampleton was never "a finalist" in fact, even though Ms. Sampleton believed that she was.[5] Like all candidates, Ms. Sampleton had the experience of interviewing with Ms. Dobbins for the position. The mere fact of the interview does not suggest that Ms. Sampleton was the selected candidate. There is nothing discriminatory about a statement that Ms. Sampleton was not a "finalist" since, in fact, she was not and there is no evidence that the selection was otherwise tainted. The statement concerning Ms. Sampleton's writing skills relates to her performance on her detail, after the selection for the EAS–25 position was made, and has no bearing on the selection process itself.

The main focus of Ms. Sampleton's challenge to this selection process appears to lie with the fact that she was offered the developmental detail, allegedly as a prelude to the award of the EAS–25 position, but then did not get the higher-level job. The record evidence demonstrates that the USPS prepared only papers to award a detail to Ms. Sampleton and at no time did it anticipate that she would be selected for the EAS–25 position.[6] Even if Ms. Sampleton were wrongly advised, however, it would merely demonstrate a lousy selection process and not race discrimination. *See Carter v. Peña,* 14 F.Supp.2d 1, 8 (D.D.C.1997) (quoting *Milton v. Wein-*

*berger,* 696 F.2d 94, 100 (D.C.Cir.1982)) ("Even if a court suspects that a job applicant 'was victimized by poor [ ] selection procedures' it may not 'second-guess an employer's personnel decision absent a demonstrably discriminatory motive.'").

## IV.  CONCLUSION

Ms. Sampleton's personal confusion about the detail and potential promotion are truly unfortunate; however, the events that actually occurred are clear in the record evidence before the Court. Based on the record, the Court finds that Ms. Sampleton's race played no role in the USPS's selection for the EAS–25 position. Accordingly, Mr. Potter's motion for summary judgment is granted. A separate order accompanies this memorandum opinion.

### *ORDER*

For the reasons stated in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. It is

**FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED**.

**SO ORDERED.**

---

5. The complaint itself confuses dates and times and makes some of Ms. Sampleton's allegations difficult to discern. The Court relies on the sworn testimony before the Administrative Judge.

6. The assignment forms and pay records show that Ms. Sampleton was temporarily

working in an EAS–21 position. *See* Def.'s Mot. for Summ. J. Exs. 10 & 11. The hiring process and the interviews for the EAS–25 position continued after Ms. Sampleton began her detail. In a welcoming email, Ms. Dobbins stated to the organization—including Ms. Sampleton—that she would be with them only temporarily on a detail. *See id.* ex. 12.