# Order

Michigan Supreme Court
Lansing, Michigan

January 29, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

139335

RODNEY DUSKIN, SYLVESTER BERRY, JR.,
WILLIAM C. BRUCE, LEON L. COLEMAN,
RICARDO H. CUMMINGS, JOHN
DANDRIDGE, DARREN FORD, KENNETH D.
FRANKLIN, DARRYL GARNER, SR., DAMON
S. MOON, MIAN M. RASHID, JEFFREY D.
ROBINSON, CRAIG E. SMITH, BILLY
STARKS, DEMETRIOUS STARLING, and
ERIC L. TAYLOR,
           Plaintiffs-Appellants,

v

DEPARTMENT OF HUMAN SERVICES,
           Defendant-Appellee.

SC: 139335
COA: 279151
Ingham CC: 06-001459-CD

_____/

On order of the Court, the application for leave to appeal the June 11, 2009 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Ingham Circuit Court for reconsideration in light of *Henry v Dow Chemical*, 484 Mich 483 (2009), which was issued after the Court of Appeals decided this case.

We do not retain jurisdiction.

CORRIGAN, J. (*dissenting*).

I dissent from the Court's unnecessary order of remand, which will result in a costly waste of scarce state resources—as well as a waste of plaintiffs' resources—in this clearly meritless class action. The Court of Appeals correctly reversed the erroneous order of former Ingham Circuit Court Judge Beverley Nettles-Nickerson granting class certification. The reasoning of the Court of Appeals is consistent with this Court's opinion in *Henry v Dow Chemical Co,* 484 Mich 483 (2009), which was issued after the Court of Appeals decided this case.

Plaintiffs are males employed by defendant, the Department of Human Services (DHS). They alleged that they were each discriminated against on the basis of race, ethnicity and gender in promotions to supervisory and management positions, in violation of Michigan's Civil Rights Act, MCL 37.2101 *et seq.* To prove unlawful discrimination, a member of a protected class must show either direct evidence of bias against the protected class of which he is a member or that he was not appointed to a position for which he was qualified and the position was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Hazle v Ford Motor Co,* 464 Mich 456, 463 (2001).

Plaintiffs clearly did not allege facts showing that defendant engaged in a common, discriminatory practice affecting each class member as would be necessary to support class certification. Certification is appropriate only if enumerated prerequisites listed in MCR 3.501(A)(1) are met. *Henry, supra* at 496, 500. The prerequisites are generally described as numerosity, commonality, typicality, adequacy and superiority. See MCR 3.501(A)(1). As we held in *Henry, supra* at 500, the "party seeking class certification must meet the burden of establishing each prerequisite before a suit may proceed as a class action." That party "is required to provide the certifying court with information sufficient to establish that each prerequisite . . . is in fact satisfied." *Id.* at 502. As is most relevant here, the commonality, typicality and superiority prerequisites require that common questions subject to generalized proof predominate over issues subject to individualized proof and that the representative plaintiffs' claims are typical of those of the class. See MCR 3.501(A)(1)(b), (c) and (e); *Tinman v Blue Cross and Blue Shield of Mich,* 264 Mich App 546, 563 (2004).

The Court of Appeals correctly concluded that plaintiffs have presented "no challenged policy or practice that affects all class members that, if discriminatory, and if remedied, could satisfactorily address plaintiffs' generalized complaints." *Duskin v Dep't of Human Services,* 284 Mich App 400, 426. Nor did they "identify an across-the-board practice or policy that negatively affects male racial and ethnic minorities, for example, in favor of female racial or ethnic minorities." *Id.* Rather, plaintiffs merely presented a memo prepared by defendant showing that a "disparity exists in minority males being promoted into upper management positions" and suggesting various ways to increase the likelihood of their promotion. But the memo did not establish that minority males were the subjects of a discriminatory policy.[1] Nor did plaintiffs allege facts

---

[1] As explained by the Court of Appeals:

> [N]othing in the memo suggests that the promotional procedures, even if imperfect, were racially biased, gender-biased, or were applied in a biased manner. Any number of nonminority or female employees might agree, for example, that job postings should be more prominent, that managers should not hire acquaintances, or that the DHS should provide

showing how many individual class members applied for and were denied management positions which were awarded to less qualified female or nonminority male candidates, as would be necessary to give rise to an inference of discrimination.[2] Plaintiffs largely relied on the subjective statements of minority male focus group members, who were quoted by the memo as expressing frustration and discouragement "with some of [defendant's] supervisory and management employees' discriminatory attitudes and practices involving racial and gender bias directed against minority males."

Accordingly, it appears that even the individual plaintiffs have not alleged facts showing either direct bias *or* that particular plaintiffs were denied positions under circumstances establishing an inference of discrimination. In any event, at a minimum there is no evidence that any discrimination by defendant is subject to generalized proof as the result of an organization-wide policy that in fact affected the individual class members. Rather, plaintiffs' claims, if any, are highly individualized. As the Court of Appeals noted:

> [T]he composition of the proposed class itself draws attention to the prospective factual and legal disparities among the individual claims. Plaintiffs' claims include allegations by male job applicants about promotions given to female candidates of the same race or ethnicity or another minority race or ethnicity, and claims by male job applicants about promotions given to Caucasian males, thus raising factual and legal issues relating to allegations of gender discrimination but not racial discrimination or racial discrimination but not gender discrimination, or both. Clearly, the proofs and law necessary to establish that the DHS discriminated against an

---

> additional interview training and encouragement. And, the alleged "perception" of a bias against minority males simply does not constitute a predominant, common question, particularly because proving such an assertion would require individualized proofs to connect that perception with particular employment decisions. [*Duskin, supra* at 418.]

[2] See *Duskin, supra* at 419:

> While plaintiffs *assert* that the class representatives applied for or were available for promotions, but were not chosen for discriminatory reasons, plaintiffs offer no information about the representatives' eligibility and qualifications, what positions they sought, what qualifications the positions required, and whether a less qualified, nonminority, or female candidate was promoted instead. And, importantly, plaintiffs fail to explain how the claims of the representative plaintiffs present a question common to the entire class of every minority male employee of the DHS.

Hispanic male candidate in favor of African-American female candidate would differ from those necessary to show that the DHS discriminated against an African-American male candidate in favor of an Arab female candidate. And the proofs and law necessary to establish that the DHS discriminated against an Asian male candidate in favor of a Caucasian male candidate would differ from those necessary to establish that the DHS discriminated against a male of Arab descent in favor of a Caucasian female. Simply stated, the law and the evidence necessary to prove and defend the myriad claims at issue differ significantly, making class treatment unsound. [*Duskin, supra* at 421-422.]

Because plaintiffs' allegations are insufficient to support class certification as a matter of law, I cannot join this Court's decision to order a futile remand that will simply drain resources and ultimately result in the same outcome as that reached by the Court of Appeals. Because I conclude that the Court of Appeals analysis was correct, I would deny leave to appeal.

YOUNG, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 29, 2010

Corbin R. Davis

Clerk

s0126