*488 WEAVER, J.
Class action litigation in Michigan is governed by the Michigan Court Rules, and MCR 3.501(A)(1) specifically sets forth the prerequisites for class certification. These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority.[1]
In this case we consider the proper analysis a court must conduct when determining whether the prerequisites for class certification have been met. Additionally, we consider whether this particular class of plaintiffs was erroneously certified by the circuit court.
In deciding these questions, we conclude that a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court should avoid making determinations on the merits of the underlying claims at the class certification stage of the proceedings.
Additionally, we remand this case to the circuit court for clarification of its analysis of MCR 3.501(A)(1)(c) and (d) in light of our opinion today.
I. FACTS AND PROCEDURAL BACKROUND
This case arises from allegations that defendant, Dow Chemical Company, negligently released dioxin, a synthetic chemical that is potentially hazardous to human health, from its Midland plant into the Tittabawassee River. The representative plaintiffs allege that they, along with the proposed class members, have incurred property damage caused by the dioxin contamination. Plaintiffs’ claims are based on theories of *489 negligence and nuisance. This dispute concerns the circuit court’s decision to grant plaintiffs’ motion for class certification.
At the outset, we note that Dow’s alleged dioxin contamination of the Tittabawassee River has been the subject of a prior appeal in this Court (Henry I).[2] In Henry I, we addressed plaintiffs’ allegations that dioxin negligently released by Dow caused a risk of harm to their health.[3] In Henry I, we articulated the basic facts and procedural history surrounding the alleged dioxin contamination as follows:
Defendant, The Dow Chemical Company, has maintained a plant on the banks of the Tittabawassee River in Midland, Michigan, for over a century. The plant has produced a host of products, including, to name only a few, “styrene, butadiene, picric acid, mustard gas, Saran Wrap, Styrofoam, Agent Orange, and various pesticides including Chloropyrifos, Dursban and 2,4, 5-trichlorophenol.” Michigan Department of Community Health, Division of Environmental and Occupational Epidemiology, Pilot Exposure Investigation: Dioxin Exposure in Adults Living in the Tittabawassee River Flood Plain, Saginaw County, Michigan, May 25, 2004, p 4.
According to plaintiffs and published reports from the [Michigan Department of Environmental Quality (MDEQ)], defendant’s operations in Midland have had a deleterious effect on the local environment. In 2000, General Motors Corporation was testing soil samples in an area near the Tittabawassee River and the Saginaw River when it discovered the presence of dioxin, a hazardous chemical believed to cause a variety of health problems such as cancer, liver disease, and birth defects.
By spring 2001, the MDEQ had confirmed the presence of dioxin in the soil of the Tittabawassee flood plain. Further investigation by the MDEQ indicated that defendant’s Midland plant was the likely source of the dioxin. *490 Michigan Department of Environmental Quality, Remediation and Redevelopment Division, Final Report, Phase II Tittabawassee/Saginaw River Dioxin Flood Plain Sampling Study, June 2003, p 42 (identifying Dow’s Midland plant as the “principal source of dioxin contamination in the Tittabawassee River sediments and the Tittabawassee River flood plain soils”).
In March 2003, plaintiffs moved for certification of two classes in the Saginaw Circuit Court. The first class was composed of individuals who owned property in the flood plain of the Tittabawassee River and who alleged that their properties had declined in value because of the dioxin contamination. The second group consisted of individuals who have resided in the Tittabawassee flood plain area at some point since 1984 and who seek a court-supervised program of medical monitoring for the possible negative health effects of dioxin discharged from Dow’s Midland plant. This latter class consists of 173 plaintiffs and, by defendant’s estimation, “thousands” of putative members.
Defendant moved under MCR 2.116(C)(8) for summary disposition of plaintiffs’ medicad monitoring claim. The Saginaw Circuit Court denied this motion, and denied defendant’s subsequent motions for reconsideration and for a stay of proceedings.
After the Court of Appeals denied defendant’s motion for peremptory reversal amd emergency application for leave to appeal, the defendant sought emergency leave to appeal in this Court. Discovery and other preliminary proceedings on plaintiffs’ motion for class certification continued in the Saginaw Circuit Court until, on June 3, 2004, we stayed the proceedings below and granted defendant’s application for leave to appeal.[4]
Given that plaintiffs did not allege a present medical injury, we concluded that plaintiffs did not assert a viable negligence claim recognized by Michigan com- *491 man law.[5] Therefore, we reversed the circuit court’s denial of Dow’s motion for summary disposition with regard to plaintiffs’ medical monitoring claims and remanded the matter to the circuit court for entry of an order of summary disposition accordingly.[6]
On remand, the circuit court addressed plaintiffs’ motion for class certification with respect to the remaining claims of negligence and nuisance, which are the subjects of the present appeal. The current proposed class consists of persons owning real property within the 100-year flood plain of the Tittabawassee River on February 1, 2002.[7] The proposed class is estimated by plaintiffs to consist of approximately 2,000 persons.
The circuit court certified the proposed class, concluding that the prerequisites for class certification in MCR 3.501(A)(1) were met. Specifically, the circuit court ruled that joinder of approximately 2,000 persons is impracticable, the question of Dow’s allegedly negli *492 gent pollution is common to all plaintiffs, the mere fact that damages may be individualized is not sufficient to defeat class certification, the plaintiffs’ property claims arise from the same alleged actions of Dow, the class members share common legal and remedial theories, and the representative plaintiffs are able to fairly and adequately protect the interests of the proposed class members.
Additionally, the circuit court determined that maintenance of this suit as a class action is the superior method of adjudication given that denial of class certification may result in up to 2,000 individual suits against Dow. The circuit court further reasoned that a class action would be manageable here because the class members all reside in the allegedly polluted area and similar evidence would be required to establish Dow’s negligence with respect to each class member.
The Court of Appeals granted Dow’s application for leave to appeal from the circuit court order granting class certification. In a divided decision, the Court of Appeals affirmed the class certification with regard to the issue of Dow’s liability only.[8]
The lead opinion concluded that class certification on all issues, including the issue of damages, is proper.[9] *493 The lead opinion relied on the MDEQ findings submitted by plaintiffs and held that, in light of the MDEQ’s findings and the fact that the parties presented contradicting theories of the dioxin contamination, the circuit court did not clearly err.[10]
A partial concurrence to and partial dissent from the lead Court of Appeals opinion agreed that the circuit court did not err in certifying the class with respect to Dow’s liability, but concluded that individualized questions prevailed with respect to the issue of damages. Thus, the partial concurrence and partial dissent reasoned that a bifurcated proceeding would be the most appropriate manner of adjudication.[11]
*494 The Court of Appeals dissent concluded that the circuit court did not engage in a “rigorous analysis” to determine whether the prerequisites for class certification are met, as required by Gen Tel Co of the Southwest v Falcon, 457 US 147, 161; 102 S Ct 2364; 72 L Ed 2d 740 (1982). Therefore, the dissent concluded that the class was erroneously certified with respect to all issues.[12]
This Court granted Dow’s application for leave to appeal, asking the parties to address, among other issues, whether the federal “rigorous analysis” requirement for class certification also applies to state class actions and whether this particular class of plaintiffs was properly certified by the circuit court.[13]
*495 II. STANDARD OF REVIEW
In order to resolve the issues presented in this case, this Court must first consider the proper application of MCR 3.501(A). The proper interpretation and application of a court rule is a question of law, which we review de novo.[14] This court uses the principles of statutory construction when interpreting a Michigan court rule.[15] We begin by considering the plain language of the court rule in order to ascertain its meaning.[16] “The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole.”[17]
However, we note that this Court has not formally established the standard of review for class certification decisions. Therefore, we take this opportunity to do so. We have held that where a party challenges a trial court’s factual findings, a review for clear error is appropriate, and where a party challenges a trial court’s exercise of discretion, a review for abuse of discretion is appropriate.[18] Given that the analysis a trial court must *496 undertake in order to determine whether to certify a proposed class may involve making both findings of fact and discretionary determinations, we find it proper to review the trial court’s factual findings for clear error and the decisions within the trial court’s discretion for abuse of discretion. This differentiated standard of review for class certification decisions is consistent with the mixed nature of a proper class certification analysis.
III. ANALYSIS
The parties dispute whether the federal “rigorous analysis” requirement for class certification also applies to state class actions and whether class certification was appropriate in this particular case.
A. WHAT IS THE PROPER ANALYSIS FOR DETERMINING WHETHER CLASS CERTIFICATION IS JUSTIFIED?
Pursuant to MCR 3.501(A)(1), members of a class may only sue or be sued as a representative party of all class members if the prerequisites dictated by the court rule are met. Therefore, in order to proceed with a suit in the form of a class action, the following circumstances must exist:
(a) the class is so numerous that joinder of all members is impracticable;
(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
(d) the representative parties will fairly and adequately assert and protect the interests of the class; and
*497 (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice. [MCR 3.501(A)(1).]
Next, MCR 3.501(A)(2) sets forth the following non-exhaustive list of factors that a court should consider when determining whether maintaining a suit as a class action is the “superior” method of adjudication:
(a) whether the prosecution of separate actions by or against individual members of the class would create a risk of
(i) inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; or
(ii) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
(b) whether final equitable or declaratory relief might be appropriate with respect to the class;
(c) whether the action will he manageable as a class action;
(d) whether in view of the complexity of the issues or the expense of litigation the separate claims of individual class members are insufficient in amount to support separate actions;
(e) whether it is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action; and
(f) whether members of the class have a significant interest in controlling the prosecution or defense of separate actions. [MCR 3.501(A)(2).]
*498 It is important to note that the rules governing class certification in MCR 3.501(A) very closely mirror the federal prerequisites for class certification found in FR Civ P 23. In Falcon, the United States Supreme Court reiterated that the class action device for litigation is “ ‘an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.’ ”[19] The Supreme Court concluded that district courts must conduct a “rigorous analysis” of each of the class action prerequisites in FR Civ P 23 before certifying a class.[20]
Dow argues that the federal “rigorous analysis” requirement should apply to state class actions as well.[21] Dow asserts that representative plaintiffs will always allege that their proposed class complies with the prerequisites for class certification, and a trial court should not simply rely on these allegations when deciding whether to certify a class. While Dow concedes that a court may not deny class certification on the ground that plaintiffs are unlikely to prevail on the merits of their underlying claims, Dow argues that this prohibition alone does not relieve plaintiffs of their burden to establish that the prerequisites of class certification have in fact been met.
*499 Conversely, plaintiffs argue that only MCR 3.501(A) governs class certification in Michigan, and that this court rule does not mandate a “rigorous analysis.” Additionally, plaintiffs point out that no decision by this Court, or any published opinion by the Court of Appeals, has held that the federal “rigorous analysis” requirement applies to state class actions.
Given that Michigan’s requirements for class certification are nearly identical to the federal requirements, we find it reasonable to conclude that similar purposes, goals, and cautions are applicable to both.[22] While it is true that Michigan courts are not bound by any decision requiring a “rigorous analysis,” we question whether the purpose of the strictly articulated class certification prerequisites would be defeated if a representative plaintiffs only burden is to simply state that its proposed class does in fact meet the prerequisites.
Dow argues that this type of lax burden would give courts the authority to “rubber stamp” a plaintiffs allegations that the prerequisites in MCR 3.501(A)(1) have been met. To avoid this danger, Dow urges this Court to clarify that the federal “rigorous analysis” standard applies for state class actions. However, Dow’s argument seems to implicate only two options: either Michigan courts must conduct a “rigorous analysis” for class certification decisions, or Michigan courts may simply accept a plaintiffs bare assertions that the prerequisites for class certification are in fact met. We believe that Dow’s argument is unnecessarily narrow in scope.
The plain language of MCR 3.501(A)(1) states that representative plaintiffs may pursue a class action suit *500 “only if’ the enumerated prerequisites are met. Thus, it is apparent that strict adherence to the class certification requirements is required. There is nothing ambiguous about this court rule. A party seeking class certification must meet the burden of establishing each prerequisite before a suit may proceed as a class action. Furthermore, there is no authority in Michigan allowing a party seeking class certification to avoid this affirmative burden.
The next logical inquiry is what a party must show in order to satisfy a court that the prerequisites for class certification are established. More specifically, how must a court analyze a party’s motion for class certification to determine whether sufficient information exists to justify certification?
Given that MCR 3.501(A)(1) contains carefully crafted prerequisites for class certification, common sense dictates that at least some greater analysis is required than simply accepting a party’s bare assertion that the prerequisites have been met. The United States Supreme Court has labeled this greater analysis as a “rigorous” one in Falcon [23] The problem is that Falcon provides little guidance as to what a “rigorous analysis” actually entails. Furthermore, Falcon is so factually distinct from the present case that we are unable to draw significant parallel conclusions.[24] What we can infer from the Falcon decision is that a court *501 must only certify a class in circumstances where the court has actually been shown that the prerequisites for class certification are satisfied.
Before Falcon, the United States Supreme Court held that trial courts should not conduct “a preliminary inquiry into the merits” of claims when making a class certification determination.[25] In Falcon, the Supreme Court reasoned that because the decision to certify a class involves considerations “ ‘enmeshed in the factual and legal issues comprising the plaintiffs cause of action,’ ” a court may at times need to look further than the pleadings to make a determination on class certification.[26] The Supreme Court added that, sometimes, the question of certification will be plainly and adequately answered by the pleadings.[27] After Falcon, the Supreme Court clarified that a trial court has broad discretion when determining whether a class should be certified; however, its discretion must be exercised within the framework of FR Civ P 23.[28]
Now, federal courts must balance both the prohibition against delving into the merits of claims during the class certification determination with the requirement that courts conduct a “rigorous analysis” to determine whether the class certification prerequisites are satisfied. The United States Court of Appeals for the Sixth Circuit recognizes that district courts must conduct a “rigorous analysis” to determine *502 whether the prerequisites in FR Civ P 23 are met.[29] In addition, the Sixth Circuit has acknowledged that it is possible to determine that the requirements for class certification are met solely on the basis of the pleadings.[30] Nevertheless, this determination often requires more information than the pleadings provide.[31]
We agree with Dow that a certifying court may not simply “rubber stamp” a party’s allegations that the class certification prerequisites are met.[32] However, the federal “rigorous analysis” requirement does not necessarily bind state courts.[33] We believe that the plain language of MCR 3.501(A) provides sufficient guidance for class certification decisions in Michigan. Given that MCR 3.501(A)(1) expressly conditions a class action on satisfaction of the prerequisites, a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court may base its decision on the pleadings alone only if the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met.[34] The averments in the pleadings of a party *503 seeking class certification are only sufficient to certify a class if they satisfy the burden on the party seeking certification to prove that the prerequisites are met, such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party.
If the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is proper.[35] However, when considering the information provided to support class certification, courts must not abandon the well-accepted prohibition against assessing the merits of a party’s underlying claims at this early stage in the proceedings.[36] Similar to the federal district courts, *504 state courts also have broad discretion to determine whether a class will be certified.[37]
Certifying courts must be mindful that, when it is necessary to look beyond a party’s assertions to determine whether class certification is proper, the courts shall analyze any asserted facts, claims, defenses, and relevant law without questioning the actual merits of the case.[38] We believe the above analysis strikes the appropriate balance between the need to ensure that the class certification prerequisites are sufficiently satisfied and the need to preserve a trial court’s discretion in making class certification decisions.
B. DID THE CIRCUIT COURT ENGAGE IN AN APPROPRIATE ANALYSIS TO DETERMINE IF THE PREREQUISITES FOR CLASS CERTIFICATION WERE SATISFIED IN THIS PARTICULAR CASE?
After reviewing the circuit court’s decision, we believe its articulation and application of the analysis for class certification is potentially inconsistent with the required analysis. Therefore, we give the circuit court the opportunity to evaluate the class certification prerequisites in light of this Court’s articulation of the proper analysis for determining whether class certification is justified.
Again, there are cases where the pleadings alone will be sufficient to establish that the prerequisites are met, and a court should not evaluate the merits of the case at *505 the class certification stage; however, mere repetition of the language of MCR 3.501(A)(1) is not sufficient to justify class certification, and there must be an adequate statement of basic facts to indicate that each prerequisite is fulfilled. As we have concluded, at least some greater analysis is required than simply accepting a party’s bare assertion that the prerequisites have been met. Thus, a circuit court may not simply accept as true a party’s bare statement that a prerequisite is met unless the court independently determines that the plaintiff has at least alleged a statement of basic facts and law that are adequate to support that prerequisite.
In this particular case, before conducting its analysis of the class certification prerequisites, the circuit court announced that it must “accept the allegations of the plaintiff in support of the motion as true.” This statement is potentially inconsistent with the standard adopted by this Court today to the extent that it could be read to require courts to accept as true plaintiffs’ bare assertions that the class certification prerequisites are met.[39]
It is not clear whether the circuit court’s understanding of the prerequisites of MCR 3.501(A)(1) was consistent with the proper analysis announced in this Court’s decision today. We acknowledge that this case does not present a situation in which plaintiffs provided the circuit court with only a complaint containing bare assertions that the prerequisites of MCR 3.501(A)(1) were met and the circuit court granted plaintiffs’ motion for class certification on the basis of those asser *506 tions alone. Instead, the circuit court conducted a two-day hearing and reviewed numerous documents from both parties, including scientific studies, affidavits from experts, and information provided by the MDEQ. In its analysis of MCR 3.501(A)(1)(a), (b), and (e), the circuit court appears to have independently determined that plaintiffs alleged a statement of basic facts and law sufficient to support each of those three prerequisites, and we hold that its analysis of those three prerequisites was sufficient. For MCR 3.501(A)(1)(c) and (d), however, the analysis conducted on the record by the circuit court was not sufficient to meet the proper analysis announced by this Court today.[40]
For MCR 3.501(A)(1)(c) and (d), where the analysis conducted by the circuit court on the record was not sufficient to meet the proper analysis, we do not believe that it is possible to look behind the circuit court’s *507 analysis in order to guess whether the circuit court actually conducted the correct analysis or whether the circuit court would have reached the same result if it had conducted the correct analysis. Especially given the extensive evidentiary record developed in this case before the class certification decision, the circuit court may have made a valid, independent determination that the plaintiffs had alleged an adequate statement of basic facts and law sufficient to support a finding that MCR 3.501(A)(1)(c) and (d) were met. Nonetheless, because the circuit court potentially used an evaluative framework that is inconsistent with this Court’s interpretation of the rule, we remand this case to the circuit court so that it may at least clarify its reasoning for ruling that MCR 3.501(A)(1)(c) and (d) were met, in light of this Court’s decision today.[41]
We do not reach the question of if, and to what extent, the issues involved in this case should be “bifurcated.” However, we note that it is within the circuit court’s discretion to certify a class on a limited basis and to decertify certain members of the class when it deems it appropriate under MCR 3.501(B)(3).[42] Indeed, the circuit court’s order suggested that it recognizes *508 that it will likely be administratively easier to bifurcate at some point. Given that the most efficient method for conducting the proceedings will likely be affected by how other issues in the case develop, and given the *509 circuit court’s extensive familiarity with the complex factual and legal issues presented, we do not think that the circuit court abused its discretion by waiting to determine to what extent bifurcation of the issues involved may be needed.
IV CONCLUSION
A party seeking class certification bears the burden of establishing that each of the prerequisites for class certification in MCR 3.501(A)(1) is in fact satisfied. It is not sufficient for a certifying court to simply accept a party’s assertion that the prerequisites are met. When it is necessary to look beyond a party’s assertions in order to assess whether the prerequisites for class certification are met, a certifying court should do so without delving into the merits of the underlying claims involved.
Because the circuit court potentially used an evaluative framework that is inconsistent with this Court’s interpretation of the rule and articulation of the proper analysis for class certification, we remand this case to the circuit court so that it may at least clarify its reasoning for ruling that MCR 3.501(A)(1)(c) and (d) were met, in light of this Court’s decision today.
Kelly, C.J., Cavanagh and Hathaway, JJ., concurred with Weaver, J.

 See infra at 496-497 for the complete court rule containing the prerequisites for class certification.

 Henry v Dow Chem Co, 473 Mich 63; 701 NW2d 684 (2005) (Hemy I).

 Id. at 67.

 Id. at 69-70.

 Id. at 81.

 Id. at 102.

 Plaintiffs define the scope of the 100-year flood plain of the Tittabawassee River as the geographic area bounded on the west and south by River Road and Stroebel Road, including areas on the west and south side of those roads, and bounded on the east and north by Midland Road, St. Andrews Road, and Michigan Avenue, including areas on the east and north side of those roads.
The Michigan Department of Environmental Quality provides the following information regarding “floodplains” on its website:
A river, stream, lake, or drain may on occasion overflow [its] hanks and inundate adjacent land areas. The land that is inundated by water is defined as a floodplain. In Michigan, and nationally, the term floodplain has come to mean the land area that will he inundated by the overflow of water resulting from a 100-year flood (a flood which has a 1% chance of occurring any given year). [<http:www.michigan.gov/ deq/0,1607,7-135-3313_3684_3725 — ,00.html> (accessed July 14, 2009).]

 Henry v Dow Chem Co, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2008 (Docket No. 266433).

 The lead opinion reviewed the order for clear error and concluded that because neither party requested an evidentiary hearing in the circuit court, there were no factual findings to review. Henry, unpub op at 7-8 (opinion of Fort Hood, J.). Additionally, the lead opinion concluded that the circuit court properly relied on caselaw in support of its decision to grant certification. Id. at 8. The lead opinion referred to two published Court of Appeals opinions in which class certification was deemed inappropriate: Zine v Chrysler Corp, 236 Mich App 261; 600 NW2d 384 (1999), and Tinman v Blue Cross & Blue Shield, 264 Mich App 546; 692 NW2d 58 (2004). After reviewing those cases, the lead opinion concluded that both cases required more of an individual *493 ized inquiry than in the present case and, therefore, the present case is factually distinguishable. Henry, unpub op at 8-11 (opinion of Fort Hood, J.).

 The MDEQ’s findings are set forth in a “declaration” made by the MDEQ. The declaration indicates that some of the levels of dioxin initially discovered near the Tittabawassee River were as high as 2,200 parts per trillion, which is a concentration 25 times that of the residential direct contact criterion. The declaration further explains that the dioxin was likely transported downstream onto the flood plain during flood events.
The declaration indicates that the MDEQ hired a survey firm to develop a flood plain map and establish the 100-year flood plain at issue. On the basis of the survey results, the MDEQ issued an information bulletin to 2,500 individuals explaining the potential hazards of dioxin exposure and the MDEQ’s need for further investigation.
According to the declaration, further investigations confirmed the presence of excessive dioxin concentrations. This discovery permitted the MDEQ to classify each contaminated property as a “facility.” The effect of the “facility” designation includes the imposition of various obligations on the affected property owners. Pursuant to state environmental laws, these property owners must notify potential purchasers of the dioxin contamination.
The MDEQ’s declaration identifies Dow’s Midland facility as the “principal source” of the dioxin. The declaration clarifies that dioxin concentrations from other sources were too low to result in the levels of dioxin discovered.

 In a “bifurcated” proceeding, the class would be certified with respect to the issue of Dow’s liability. If Dow’s liability is established, *494 individual plaintiffs must then choose whether to seek damages on their own. Henry, unpub op at 2 (Meter, EJ., concurring in part and dissenting in part). As the partial concurrence and partial dissent reasoned, the circuit court may “use case-management tools to consolidate claims that will involve largely similar proofs on the issue of damages.” Id.

 Henry, unpub op at 1 (K. F. Kelly, J., dissenting). The dissent additionally opined that individual issues overwhelmingly predominate over any common issues of fact and law in this case, specifically noting that the flooding pattern is not uniform for each plaintiff involved. Id. at 5.

 Henry v Dow Chem Co, 482 Mich 1043 (2008). The order asked the parties to consider specifically:
(1) whether the “rigorous analysis” requirement for class certification that is applied in the federal courts also applies to state class actions, see Gen Tel Co of the Southwest v Falcon, 457 US 147, 161; 102 S Ct 2364; 72 L Ed 2d 740 (1982); (2) if so, whether the Saginaw Circuit Court engaged in the required rigorous analysis to determine if class certification was appropriate; (3) whether the plaintiffs met all of the requisites for class certification established in MCR 3.501(A)(1), including the requirement that questions of law or fact common to the members of the class predominate over questions affecting only-individual members; and (4) whether the plaintiffs established that they suffered injury on a class wide basis in order to justify class certification.

 Haliw v Sterling Hts, 471 Mich 700, 704; 691 NW2d 753 (2005).

 Id.

 Id. at 705.

 Id. at 706.

 Herald Co, Inc v Eastern Michigan Univ Bd of Regents, 475 Mich 463, 471-472; 719 NW2d 19 (2006). In Herald, this Court clarified, in the conteürt of the Freedom of Information Act (FOIA), that if a party challenges some underlying fact supporting the trial court’s decision, then the appropriate standard of review is clear error, and the reviewing court must defer to the trial court’s view of the facts unless the reviewing court is “left with the definite and firm conviction that a mistake has been made by the trial court.” Id. at 472. However, we further held that “when an appellate court reviews a decision committed to the trial court’s discretion, such as the balancing test at issue in [FOIA cases],. .. the appellate court must review the discretionary determinations for an abuse of discretion . ...” Id.

 Falcon, supra at 155 (citation omitted).

 Id. at 161.

 Dow asserts that the “rigorous analysis” requirement has already been incorporated into Michigan caselaw in Jackson v Wal-Mart Stores, Inc, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2005 (Docket No. 258498), at 3, quoting Falcon, supra at 155.
In Jackson, the Court of Appeals reasoned that “ ‘the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiffs cause of action,’ ” and the “rigorous analysis” may necessarily require the court to “ ‘probe behind the pleadings’ and analyze the claims, defenses, relevant facts, and applicable substantive law ‘before coming to rest on the certification question.’ ” Jackson, supra at 3, quoting Falcon, supra at 155, 160 (citation and quotation marks omitted).

 The United States Court of Appeals for the Sixth Circuit recognized class actions as a procedural device used “to achieve the economies of time, effort, and expense.” Sterling v Velsicol Chem Corp, 855 F2d 1188, 1196 (CA 6, 1988).

 Falcon, supra at 161.

 Falcon is based on federal claims of Title VII discrimination. The most significant issue in Falcon dealt with whether it was sufficiently-shown that the representative plaintiff had claims that were typical of those of the other class members. The Supreme Court concluded that no showing had been made regarding questions of law or fact that were common to the claims of the representative employee and of the members of the class he sought to represent. The Supreme Court stated in conclusion that “a Title VII class action, like any other class action, may *501 only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have heen satisfied.” Id. at 161.

 Eisen v Carlisle & Jacquelin, 417 US 156, 177; 94 S Ct 2140; 40 L Ed 2d 732 (1974).

 Falcon, supra at 160, quoting Coopers & Lybrand v Livesay, 437 US 463, 469; 98 S Ct 2454; 57 L Ed 2d 351 (1978) (citation and quotation marks omitted).

 Id.

 Gulf Oil Co v Bernard, 452 US 89, 100; 101 S Ct 2193; 68 L Ed 2d 693 (1981).

 In re American Med Sys, Inc, 75 F3d 1069, 1078 (CA 6, 1996).

 Id. at 1079, citing Weathers v Peters Realty Corp, 499 F2d 1197, 1200 (CA 6, 1974).

 Id.

 We note that plaintiffs do not contest this argument. In fact, plaintiffs assert that if this Court finds the need to articulate the proper analysis for class certification, it may find valuable guidance in Sixth Circuit decisions.

 See Walters v Naddell, 481 Mich 377, 390; 751 NW2d 431 (2008).

 The Sixth Circuit reasoned as follows in In re American Med Sys:
“Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. *503 Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide .... The parties should be afforded an opportunity to present evidence on the maintainability of the class action.” [In re American Med Sys, supra at 1079, quoting Weathers, supra at 1200.]

 A court may permit discovery before ruling on class certification pursuant to MCR 3.501(B)(3)(b), which states: “The court may allow the action to be maintained as a class action, may deny the motion, or may order that a ruling be postponed pending discoveiy or other preliminary procedures.”

 Beattie v CenturyTel, Inc, 511 F3d 554, 560 (CA 6, 2007). In Beattie, the court acknowledged that a “rigorous analysis” must be applied to determine whether the prerequisites for class certification in FR Civ P 23 are met. However, the court also noted as follows:
Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiffs suit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177; 94 S. Ct. 2140; 40 L. Ed. 2d 732 (1974) (“We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.”). Daffin v. Ford Motor Co., 458 F.3d 549, 553 (6th Cir. 2006); [id.]

 See In re American Med Sys, supra at 1079.

 In Jackson, the Court of Appeals did in fact rely on Falcon. However, the Court of Appeals did not lose sight of the prohibition against examining the merits of a case when determining whether to certify a class, even if the certifying court finds it necessary to “ ‘probe behind the pleadings’ and analyze the claims, defenses, relevant facts, and applicable substantive law ‘before coming to rest on the certification question.’ ” Jackson, supra at 3, quoting Falcon, supra at 160, and citing Neal v James, 252 Mich App 12, 15; 651 NW2d 181 (2002).

 The circuit court’s statement of the appropriate standard is similar to the approach previously adopted by the Court of Appeals in Neal, supra at 15-16. Therefore, to the extent that Neal could be read to require a trial court to accept as true a plaintiffs bare assertion that a class certification prerequisite is met, we overrule Neal.

 For MCR 3.501(A)(1)(c), the typicality prerequisite, the circuit court’s analysis consisted of a restatement of the standard; a statement that “plaintiffs contend” that their claims “arise from the same course of conduct” and that “they share common legal and remedial theories”; and a quote from a federal district court case stating that the typicality requirement may be satisfied if “there is a nexus between the class representatives’ claims [and] defenses and the common questions of fact or law which unite the class.” It is unclear from the circuit court’s analysis whether it independently determined that the plaintiffs alleged basic questions of law and fact sufficient to support their allegation that their legal remedial theories were typical of those of the class.
In the circuit court’s analysis of MCR 3.501(A)(1)(d), the adequacy of representation prerequisite, it stated that “[t]he representative parties will fairly and adequately assert and protect the interest of the class.” It supported this conclusion by reasoning that “no proof has been submitted to this Court that would indicate that the Plaintiffs herein, the representative parties, would not fairly and adequately assert and protect the interest of the class.” In other words, the circuit court did not perform an analysis that sufficiently shows that it independently determined that the plaintiffs would adequately represent the class and also potentially shifted the burden to defendant to show that plaintiffs would not adequately represent the class.

 To the extent that the circuit court determines that the standard it initially used is inconsistent with the proper standard, it should reanalyze all the prerequisites under MCR 3.501(A)(1). If, however, the circuit court determines that its standard was consistent with the proper standard, it should only revisit MCR 3.501(A)(1)(c) and (d) in order to provide further explanation on the record for its conclusion that the prerequisites were met.

 Justice Young states that we have “reversed the Court of Appeals majority’s decision that bifurcation on damages is required” and, in doing so, violated this Court’s procedural rules because the plaintiffs did not file a cross-appeal on this issue. Post at 527. We disagree that the Court of Appeals reached a decision on bifurcation that would have required plaintiffs to cross-appeal the issue in order for it to be before this Court.
*508 We suggest that Justice Young is misreading the Court of Appeals opinions. To the extent that there was a Court of Appeals “decision” on bifurcation, it is because there were two votes in favor of class certification only for the issue of liability and two votes against class certification only for the issue of whether the commonality prerequisite was met with regard to damages. The Court of Appeals wrote three separate opinions. Henry v Dow Chem Co, unpublished opinion of the Court of Appeals, issued January 24, 2008 (Docket No. 266433). Judge Karen Fort Hood would have affirmed the trial court’s ruling that the class should be certified, without qualification. Judge Patrick Meter, in a partial concurrence and partial, dissent, would have certified the class “with regard to defendant’s potential liability,” but believed that “with regard to damages, individual questions predominate over common questions.” Id. at 1 (Meter, P.J., concurring in part and dissenting in part). Therefore, he believed that “the damages phase, should liability be established, must be dealt with on a case-by-case basis.” Id. Judge Kirsten Frank Kelly would have reversed the trial court and held that the class could not be certified with regard to any issues because she believed that “individual questions of fact and law predominate over the issues common to the class such that the commonality requirement of MCR 3.501(A) is not met.” Id. at 1 (K. F. Kelly, J., dissenting).
Given that only one Court of Appeals judge held that bifurcation was necessary, reading the Court of Appeals opinion to have reached a holding regarding bifurcation requires cobbling together three divergent applications of the commonality prerequisite in MCR 3.501(A)(1). If this Court were to reverse the Court of Appeals holding concerning the commonality prerequisite with regard to damages, there would be no Court of Appeals “decision” requiring bifurcation. This Court specifically granted leave on whether the commonality prerequisite was met. Henry v Dow Chem Co, 482 Mich 1043 (2008) (ordering the parties to address “whether the plaintiffs met all of the requisites for class certification established in MCR 3.501[A][1], including the requirement that questions of law or fact common to the members of the class predominate over questions affecting only individual members [the commonality prerequisite]”). Therefore, to the extent that there was a Court of Appeals holding regarding bifurcation, it is squarely before this Court.